UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
GREGORY QUINN and VIKKI QUINN,

                                    Plaintiffs,

          -against-

THE CITY OF LONG BEACH, THE CITY OF
LONG BEACH POLICE DEPARTMENT,
THOMAS R. SOFIELD, JR., individually and in his
capacity as a City of Long Beach City Council
Member, THOMAS SOFIELD, SR., individually
and in his capacity as Commissioner of the City of
Long Beach Police Department, JOHN DOES 1-10,
GREGORY SOFIELD, JOHANNA SOFIELD,
AND CHARLES THEOFAN,

                                    Defendants.
-------------------------------------------------------X
FEUERSTEIN, J.

**OPINION AND ORDER**
08 CV 2736 (SJF) (ETB)

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   SEP 15 2010   ★

LONG ISLAND OFFICE

I.     Introduction

On July 9, 2008, plaintiffs Gregory Quinn ("Gregory Q.") and Vikki Quinn ("Vikki" and

together with Gregory Q., "Plaintiffs") commenced this action against defendants the City of Long

Beach (the "City"), the City of Long Beach Police Department (the "Police Department"), Thomas

R. Sofield, Jr., individually and in his capacity as a City of Long Beach City Council Member

("Thomas Jr."), Thomas Sofield, Sr., individually and in his capacity as Commissioner of the City

of Long Beach Police Department ("Thomas Sr."), Charles Theofan ("Theofan" and, together with

the City, the Police Department, Thomas Jr., and Thomas Sr., the "Municipal Defendants"), Gregory

Sofield ("Gregory S."), and Johanna Sofield ("Johanna", and together with Gregory S., the "Sofield

Defendants;" the Municipal Defendants and the Sofield Defendants shall collectively be known as the "Defendants") alleging, *inter alia*, violations of 42 U.S.C. § 1983 ("Section 1983") and state law claims. Defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motions for summary judgment are granted.

II.    Background

    A.    The Parties

Plaintiffs are City residents who currently, and at all times relevant to this action, reside at 736 Bay Drive in Long Beach, New York. (Municipal Defendant's Statement of Uncontested Material Facts Pursuant to Local Rule 56.1 ("Mun. 56.1 Statement"), at ¶ 1; Compl., at ¶¶ 8-9.)

The City is a city and a public corporation organized pursuant to the laws of the State of New York. (Mun. 56.1 Statement, at ¶ 2.) The City is governed by the Long Beach City Council (the "City Council"), comprised of five (5) elected officials, as well as the Long Beach City Manager (the "City Manager"), who has all of the powers and duties of a mayor, and is appointed by the City Council members. (Id., at ¶¶ 5-8.)

Thomas Jr. has served as President of the City Council since January 2008. (Id., at ¶ 6.) Prior thereto, and at all times relevant to this action, Thomas Jr. served as a City Councilman. (Id.)

Theofan has served as City Manager since January 2008. (Id., at ¶ 8.) He previously

2

served as City Manager from October 2004 to December 2005. (Id.)

The Police Department is the law enforcement unit of the City. (Id., at ¶ 3). All Police Department personnel "receive extensive law enforcement training prior to commencement of employment." (Id., at ¶ 4.)

Thomas Sr. currently, and at all times relevant to this action, "serves as Acting Commissioner of the Police Department." (Id., at ¶ 3.)

Gregory S. and Johanna are City residents who currently, and at all times relevant to this action, reside at 535 Grand Boulevard in Long Beach. (Id., at ¶ 9.) Gregory S. is the son of Thomas Sr. and the brother of Thomas Jr. (Id.)


B.     Factual Background


West Bay Drive in Long Beach, bordered by Reynolds Channel to the north, was formerly known as "Water Street." (Id., at ¶ 11.) In 2003, the city sued Plaintiffs and several other residents of West Bay Drive seeking a declaration that the City owned West Bay Drive. (Id., Ex. F.) Plaintiffs and the other residents countersued the City in an attempt to have West Bay Drive declared a private road. (Id., at ¶ 11, Ex. F.) As a result of the litigation, West Bay Drive was declared a private road, with each resident of West Bay Drive thereafter owning the portion of West Bay Drive located directly in front of his or her parcel, "subject only to an easement of way as may be necessary in favor of the other residents." (Id., at ¶ 11, Ex. F.)

In 2004, the Sofield Defendants organized a meeting of West Bay Drive residents to discuss building a fence or gate around West Bay Drive to limit traffic in the area. (Affidavit of

3

Gregory Quinn ("GQ Aff."), at ¶ 4.) Shortly thereafter, the Sofield Defendants installed a large

wooden security gate on their property to prevent traffic seeking access through West Bay Drive.

(Affidavit of Gregory Sofield and Johanna Sofield ("Sofield Aff."), at ¶ 11; GQ Aff., at ¶ 6.) The

gate was secured by "L brackets" which did not require a key or combination to open. (Mun.

56.1 Statement, at 16.) If the gate was not open, residents were required to exit their vehicles to

open the gate before passing through. (Id.) On June 24, 2004, West Bay Drive resident Vera

Trolf initiated an action against the Sofield Defendants seeking to compel the removal of the

gate. (Id., at ¶ 19.) Ms. Trolf prevailed, and the Sofield Defendants removed the gate in May

2006, and installed speed bumps on their portion of West Bay Drive. (Id., at ¶¶ 19, 27.)

Meanwhile, in May 2005, the Sofield Defendants complained to the City about sanitation

trucks traveling on West Bay Drive, and the City subsequently ceased sanitation services on West

Bay Drive. (Id., at ¶ 30.) Although the City Manager attempted to gain all of the residents'

permission to resume sanitation services on the private road, he failed to do so, and the residents

now bring their garbage from West Bay Drive to another block for collection. (Id., at ¶¶ 31-33.)

In July 2005, the Sofield Defendants created a garden at the corner of their property on

Grand Boulevard and West Bay Drive. (Id., at ¶ 34.) The garden is bordered by wooden railroad

ties, which effectively narrow the easement from twenty-four (24) feet wide to less than fifteen

(15) feet wide. (Id.; Dep. of Vicki Quinn ("VQ Dep."), at 75-80; GQ Aff., at ¶ 10.) On July 10,

2005, Gregory Q. drove his vehicle eastward from his home towards the intersection of Grand

Boulevard and West Bay Drive, where he stopped to open the Sofield Defendant's gate. (Mun.

Def. 56.1 Statement at ¶¶ 36-37.) At the time, the Sofield Defendants were tending to their

garden, but when Gregory Q. exited his vehicle to open the gate, a verbal altercation ensued.

4

(Id.; GQ Aff., at ¶ 11.)  Gregory Q. returned to his vehicle, and attempted to leave, but he hit a railroad tie bordering the garden, which caused his tires to skid as he drove away.  (Mun. Def. 56.1 Statement, at ¶ 38-39.)  He returned to his home shortly thereafter.  (Mun. Def. 56.1 Statement at ¶ 40.)

At approximately 11:30 a.m. that day, the Sofield Defendants contacted the Police Department, alleging that Gregory Q. "drove his [vehicle] at [Gregory S.] in a reckless manor causing [Gregory S.] to jump out of the way in fear for his safety."  (Police Record, Decl. of Robert Agnosti ("Agnosti Decl."), Ex. I, at 2.)  Officers Robert Fales and Christopher Ryan of the Police Department, led by Sergeant Eric Creegan, responded to the scene.  (Mun. Def. 56.1 Statement, at ¶ 45.)  Officer Fales took the sworn statements of the Sofield Defendants, which both stated that Gregory Q. accelerated his vehicle and made a sharp turn to drive towards Gregory S, causing Gregory S. to fear for his safety and the safety of his nearby child.  (Sofield Statements, Agnosti Decl, Ex. H.)  Additionally, Officer Ryan inspected the physical evidence at the scene, taking six (6) photographs documenting the tire treads left by Gregory Q.'s vehicle. (Id.)

While the officers were investigating the scene, Thomas Sr. arrived and informed Sergeant Creegan that he was there "only as a concerned grandparent."  (Mun. Def. 56.1 Statement, at ¶ 46.)  He remained in the Sofield Defendants' home until the investigation was completed.  (Id.; Affidavit of Sergeant Eric Creegan ("Creegan Aff"), at ¶ 8.)

Based upon the Sofield Defendant's sworn statements, and the physical evidence documented by Officer Ryan, Sergeant Creegan determined that "probable cause existed to believe that Gregory Quinn had violated N.Y. Penal Law § 120.20 by recklessly engaging in

5

conduct which created a substantial risk of injury to Gregory Sofield, and caused him to fear for his safety." (Creegan Aff., at ¶ 11.) Sergeant Creegan asked Gregory Q. to accompany the officers to Police headquarters to answer some questions. (Id., at ¶ 12; Mun. Def. 56.1 Statement, at ¶ 49.) When Gregory Q. inquired as to whether he was being placed under arrest, Sergeant Creegan stated that he was, but the Police did not "want to make a scene," (Mun. Def. 56.1 Statement, at ¶ 51; GQ Dep., at 84-85) and wished to spare his family from "witnessing the actual arrest (i.e. handcuffing, etc.)." (Creegan Aff, at ¶ 12.) Gregory Q. entered the police vehicle and was transported to the Police precinct, where he was handcuffed and placed in a holding room. (Mun. Def. 56.1 Statement, at ¶¶ 52-53.) Vikki posted bail securing his release approximately four (4) hours later. (Id., at ¶ 53.) On December 8, 2006, after a trial before the Honorable William J. O'Brien of the District Court of Nassau County, Gregory Q. was acquitted of his charges. (Sofield Def. 56.1 Statement, at ¶¶ 15-16.)

III. Discussion

A. Legal Standard

Summary judgment should not be granted unless "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In ruling on a summary judgment motion, the district court must resolve all ambiguities,

and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (citations and quotation marks omitted). "A fact is material when it might affect the outcome of the suit under governing law." Id. An issue of fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party bears the initial burden of establishing the absence of any genuine issue of material fact, after which the burden shifts to the nonmoving party to establish the existence of a factual question that must be resolved at trial. See Koch v. Town of Brattleboro, VT, 287 F.3d 162, 165 (2d Cir. 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"In order to defeat a motion for summary judgment supported by proof of facts that would entitle the movant to judgment as a matter of law, the nonmoving party is required under Rule 56(e) to set forth specific facts showing that there is a genuine issue of material fact to be tried. If the nonmoving party does not so respond, summary judgment will be entered against him." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (citations omitted). The nonmoving party "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." Id. at 532-33 (quotations and citations omitted).

III.    Analysis

7

A.    Section 1983 Claims Against the Municipal Defendants

Section 1983 provides, in pertinent part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (internal quotations and citation omitted). Thus, to state a claim under Section 1983, a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Moreover, "[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Moffitt v. Town of Brookfield, 950 F.2d 880, 886 (2d Cir.1991) (citing McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977), cert. denied, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978); Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065-66 (2d Cir.1989).

Plaintiffs assert the following Section 1983 claims against the Municipal Defendants: (1) a false arrest claim asserting that Gregory Q. "was denied his due process rights by the [Police Department] and [the City] when they arrested him without probable cause on July 10, 2005;" (2) a malicious prosecution claim alleging that Gregory Q. was "made to defend a frivolous criminal

action against him;" and (3) an equal protection claim alleging that Plaintiffs "were denied the equal protection of the law by [the Police Department] and [the City] not enforcing the easement against" the Sofield Defendants. (Compl. at ¶¶ 56-59.)

### 1.    The False Arrest Claim

Although Plaintiffs have classified their false arrest claim as a due process claim, it is the Fourth Amendment that provides constitutional protections against arrests without probable cause. See U.S. Const. Amend. IV. See also Albright v. Oliver, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)(plurality opinion) (noting that "[t]he Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it"). Therefore, the Fourth Amendment and "not the more generalized notion of substantive due process must be the guide for analyzing [Plaintiffs' claims]." Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). To succeed on a Fourth Amendment claim of false arrest pursuant to Section 1983, a plaintiff must prove the same elements required pursuant to New York State law, that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. See Savino v. City of New York, 331 F.3d 63, 75 (2d Cir.2003); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir.1996). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." Weyant, 101 F.3d 845, 852 (2d Cir.1996)

9

(internal citations omitted). Probable cause to arrest exists when an officer "has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006). See also Amore v. Novarro, 610 F.3d 155, 167 (2d Cir.2010) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)) ("Probable cause exists if at the time of the arrest 'the facts and circumstances within th[e officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'") A court must evaluate the existence of probable cause based upon the "totality of the circumstances and in light of the facts available to the arresting officer at the time of the arrest." Dewitt v. City of Troy, No. 1:09-cv-16, 2010 WL 3312634, at *3 (N.D.N.Y. Aug. 19, 2010) (citing Jenkins v. City of New York, 478 F.3d 76, 90 (2d Cir.2007); Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir.1997)). The "determination of probable cause does not turn on whether [an officer's] observations were accurate, but on whether [the officer] was reasonable in relying on those observations." Bernard v. United States, 25 F.3d 98, 103 (2d Cir.1994).

The Municipal Defendants contend that the sworn statements by the Sofield Defendants and the corroborating evidence collected at the scene by Officer Ryan created probable cause for Gregory Q.'s arrest. (Mun. Def. Mem. Of Law, at 5.) "An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise

doubts as to the victim's veracity." Singer v. Fulton County Sheriff, 63 F.3d 110, 119 (2d Cir.1995). See also Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir.2001) (noting that when "information is received from a putative victim . . . probable cause exists unless the circumstances raise doubt as to the person's veracity").

The Police Department arrested Gregory Q. for a violation of New York Penal Law § 120.20, which provides that "[a] person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury to another person." N.Y. Penal L. § 120.20. In his sworn statement, Gregory S. stated that: (1) Gregory Q. "accelerated his vehicle and made a sharp right turn in [Gregory S.'s] direction;" (2) Gregory S. "was afraid that [Gregory Q.] was going to strike [him] with the vehicle or possibly run over [his] feet;" (3) Gregory S "was fearful for [his] safety due to the reckless and . . . antagonistic way [Gregory Q.] operates his vehicle;" and (4) Gregory Q. drove his vehicle into the Sofield Defendant's garden, causing Gregory S. "to jump back from the Jeep into [his] garden to avoid being struck." (Sofield Statements, Agnosti Decl, Ex. H., at 1.) Likewise, in her sworn statement, Vikki stated that she "saw Greg Quinn's car accelerate and swerve in the direction of [her] husband [and her] husband jumped out of the way." (Id., at 3.) Accordingly, the information conveyed by the Sofield Defendants to the Police Department gave the Police Department probable cause to arrest Gregory Q.

Plaintiffs contend that even if the Sofield Defendants' sworn statements created probable cause to arrest, the Police Department did not always act upon the complaints of the Sofield Defendants, and therefore, the Police Department's knowledge of the Sofield Defendant's

11

"propensity to lie negated any possible probable cause that could be gleaned from the original

complaint." (Pl. Mem. Of Law, at 5.) However, given the fact that "there was physical evidence

that corroborated the Sofield's claims" in the form of "tire tracks turning sharply towards the

Sofield's garden located along the side of the road," (Creegan Aff., at ¶ 10), a "person of

reasonable caution" would be justified in believing that Gregory Q. violated N.Y. Penal Law §

120.20 by recklessly engaging in conduct creating a substantial risk of serious injury to Gregory

S. Jaegly, 439 F.3d at 151. See also Reynolds v. City of New York, No. 04 Civ. 6540, 2005 WL

2861601, at *3 (S.D.N.Y. Oct. 31, 2005 (holding that probable cause for arrest existed,

regardless of the police officer's knowledge of the victim's propensity to lie, where physical

evidence existed to corroborate the victim's claims).

Plaintiffs further contend that the Police Department lacked probable cause because

the"officers refused to speak with witnesses at the scene who claimed that the event had never

occurred, despite Greg Quinn's protests and the witnesses' protests just prior to the arrest of Greg

Quinn." (Pl. Mem. Of Law, at 5-6.) "[U]nder some circumstances, a police officer's awareness

of the facts supporting a defense can eliminate probable cause" for arrest. Jocks v. Tavernier,

316 F.3d 128, 135 (2d Cir. 2003). However, while an arresting officer may not deliberately

disregard facts known to the officer which may establish justification or a defense, he is not

required "to investigate exculpatory defenses offered by the person being arrested or to assess the

credibility of unverified claims of justification before making an arrest." Id., at 135-36. Both

Plaintiffs indicate that the officers "refused to take eye witness statements" even though a

neighbor "attempted numerous times to tell Officer Fales what she observed" and also attempted

to speak to Officer Ryan and Sergeant Creegan. (GQ Aff., at ¶ 12; VQ Aff., at ¶ 14.) However, "[a]fter evaluating the sworn statements and corroborating evidence before [him], . . . [a]s the ranking sergeant on the scene, [Sargeant Creegan] then made the (related) determination that probable cause existed." (Creegan Aff., at ¶ 11.) He did not deliberately overlook exculpatory evidence known to him, but merely declined to conduct a further investigation at that time, and once Sergeant Creegan had "a reasonable basis for believing there [was] probable cause, he [was] not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Ricciuti v. N.Y.C. Transit Authority, 124 F.3d 123, 128 (2d Cir.1997). See also Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (noting that "[a]lthough a better procedure may have been for the officers to investigate [the arrestee's] version of events more completely, the arresting officer does not have to prove [the arrestee's] version wrong before arresting him"); Krause v. Bennett, 887 F.2d 362, 372 (2d Cir.1989) (noting that an officer's function is to "apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.") Moreover, insofar as Plaintiffs argue that Thomas Sr. "at the behest of his son and daughter-in-law, order[ed] the officers at the scene to ignore exculpatory evidence," (Pl. Mem. Of Law, at 5), Plaintiffs offer no evidence to support this allegation,[1] and they "'may not rely on conclusory allegations or unsubstantiated speculation'" in

---

[1] At her deposition, Vikki responded to questions regarding this allegation as follows:

> Q:    Which officers do you believe were unduly influenced by Commissioner Sofield?
> A:    Any officer at the scene.
> Q:    Do you have any specific evidence of that?
> A:    I don't need evidence. I know that the police coming there was

seeking to avoid summary judgment." Kang v. Hertz Vehicles, LLC, No. CV 08-1283, 2009 WL 3762648 at *1 (E.D.N.Y. Nov. 10, 2009) (quoting Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001)). Accordingly, as there is no genuine issue of material fact as to whether the Police Department had probable cause to arrest Gregory Q. on July 10, 2005, Plaintiffs's Section 1983 claim asserting false arrest fails, and the Municipal Defendants' motion for summary judgment on this claim is granted.

2. The Malicious Prosecution Claim

Plaintiffs allege that due to the actions of the Municipal Defendants, Gregory Q. was "made to defend a frivolous criminal action against him." (Amend. Compl., at ¶ 57.) To prevail on a Section 1983 claim of malicious prosecution, a plaintiff must demonstrate: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir.1997) (quotations and citations omitted). As probable cause existed for Gregory Q's arrest, and Plaintiffs offer no intervening evidence between the arrest and the trial which would tend to negate probable cause, Plaintiffs' malicious prosecution claim is unable to withstand a motion for

---

enough.

(VQ Dep, at 96.)

14

summary judgment. See Smith v. City of New York, No. 04 Civ. 3286, 2010 WL 3397683, at *

8 (S.D.N.Y. Aug. 17, 2010) (quoting Dukes v. City of New York, 879 F.Supp. 335, 342

(S.D.N.Y.1995)) ("Once probable cause to arrest is established, a claim for malicious prosecution

is barred 'unless plaintiff can demonstrate that at some point subsequent to the arrest, additional

facts came to light that negated probable cause.'") Moreover, although Plaintiffs can demonstrate

that a criminal proceeding was commenced against Gregory Q., the proceeding was commenced

by the Nassau County District Attorney's Office, not the Municipal Defendants. (See Agnosti

Decl., Ex. K). "[O]nce a criminal defendant has been formally charged, the chain of causation

between the officer's conduct and the claim of malicious prosecution is broken by the intervening

actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution."

Alcantara v. City of New York, 646 F.Supp.2d 449, 459 (S.D.N.Y.2009). As the Nassau County

District Attorney's Office, which is not a party to this action, and not the Municipal Defendants,

made the determination to prosecute Gregory Q., Plaintiffs cannot demonstrate that the

Municipal Defendants initiated a criminal proceeding against Gregory Q., and their Section 1983

malicious prosecution claim fails. See Smith, 2010 WL 3397683, at *9 (noting that "[t]he

District Attorney's office could have declined to prosecute, but made the independent

determination that there was reason to go forward, and . . . [a]ccordingly, plaintiff cannot

establish that anyone other than the New York County District Attorney's Office, which is not a

party to this action, initiated the prosecution"). Therefore, the Municipal Defendants' motion for

summary judgment on this claim is granted.

3.     The Equal Protection Claim

The Municipal Defendants argue that Plaintiffs' equal protection claim must fail because Plaintiffs fail to allege, much less prove, membership in an identifiable or suspect class. The Equal Protection Clause requires that the government treat all similarly situated individuals alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985); Cobb v. Pozzi, 363 F.3d 89, 110 (2d Cir.2004). Equal protection selective enforcement claims require evidence: (1) that the plaintiff "was treated differently from other similarly situated individuals"; and (2) that the selective treatment was motivated by some "impermissible consideration[ ] such as 'race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [the plaintiff].'" U.S. v. Stewart, 590 F.3d 93, 121 (2d Cir.2009), cert. denied by Sattar v. U.S., --- U.S. ----, 130 S.Ct. 1924, 176 L.Ed.2d 404 (2010) (quoting Harlen Associates v. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir.2001)); see also Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir.2007); Cobb, 363 F.3d at 110.

Although Plaintiffs contend that the arrest was premised upon the "targeting [of] [their] specific family to torment, arrest, and punish" by the Municipal Defendants with the intent of injuring the Plaintiffs, they have failed to submit any evidence demonstrating that they were subjected to selective treatment by the Municipal Defendants motived by any "impermissible consideration." Stewart, 590 F.3d at 121. Moreover, the City's inaction with respect to the Sofield Defendants' gate inconvenienced all West Bay Drive residents, as did the City's

cessation of sanitation services. (Mun. 56.1 Statement, at ¶¶ 17, 31-33.) While Plaintiffs are understandably frustrated by the inconveniences caused by the Sofield Defendants' Gate, their frustration nevertheless does not arise to a violation of equal protection. Accordingly, the Municipal Defendants' motion for summary judgment on this claim is granted.

B.      Fourteenth Amendment Claim Against All Defendants

Plaintiffs' Fourth Cause of Action is captioned "Fourteenth Amendment" and essentially repeats the same allegations as the Section 1983 claims against all Defendants. (Compl., at ¶¶ 71-75.) Accordingly, for the reasons discussed above, Defendants' motions for summary judgment on Plaintiffs' claims that the Defendants "violated the plaintiffs' right to equal protection of the law under the Fourteenth Amendment to the United States Constitution by failing to properly enforce the terms of the easement" and "violated plaintiff Gregory Quinn's due process rights under the Fourteenth Amendment to the United States Constitution when they arrested him without probable cause" are granted.

Insofar as Plaintiffs intended their Fourteenth Amendment claim to state a substantive due process claim based upon the Defendants' alleged failure to enforce the terms of the easement or provide sanitation services, "[s]ubstantive due process protects only those interests that are 'implicit in the concept of ordered liberty.'" Id. (quoting Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). In order to establish a substantive due process violation, a plaintiff must demonstrate that: (1) the plaintiff had a "valid property interest;" and

(2) "defendants infringed on that property right in an arbitrary or irrational manner." <u>Cine SK8 v. Town of Henrietta</u>, 507 F.3d 778, 784 (2d Cir. 2007) (citing <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 503 (2d Cir. 2001)); <u>see also</u> <u>Ferran v. Town of Nassau</u>, 471 F.3d 363, 369 -70 (2d Cir. 2006) (stating that "[t]o establish a substantive due process violation, the [plaintiffs] must show that the [defendant's] alleged acts against their land were 'arbitrary,' 'conscience-shocking,' or 'oppressive in the constitutional sense,' not merely 'incorrect or ill-advised'") (quoting <u>Lowrance v. C.O. S. Achtyl</u>, 20 F.3d 529, 537 (2d Cir. 1994)). "[C]onduct that would rise to this standard included a 'planning dispute . . . tainted with . . . racial animus' or 'fundamental procedural irregularity.'" <u>Cine SK8, Inc.</u>, 507 F.3d at 785 (quoting <u>Natale v. Town of Ridgefield</u>, 170 F.3d 258, 262 (2d Cir. 1999)). State law defines the contours of constitutionally protected property interests. <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

It is undisputed that Plaintiffs possessed a property interest in the portion of West Bay Drive situated directly adjacent to their property, as well as an easement permitting access through the remainder of West Bay Drive. (<u>See</u> Mun. Def. 56.1 Statement, at ¶ 11; Agnosti Decl., Ex. F.) However, insofar as Plaintiffs complain that the Municipal Defendants failed to properly enforce their easement, "it is not the obligation of a municipality to enforce a private easement," and therefore, Plaintiffs cannot contend that the Municipal Defendants' inaction was arbitrary or "conscience-shocking." <u>Pirrotti v. Town of Greenburgh</u>, No. 18135-09, 2009 WL 3834399, at *8 (N.Y. Sup. Ct. Oct. 28, 2009). Moreover, the City currently provides Plaintiffs with sanitation services on an adjacent block, and only declined to resume services on West Bay

Drive due to the failure of the residents of West Bay Drive, including Plaintiffs, to agree to return

hold harmless agreements. (Mun. Def. 56.1 Statement, at ¶¶ 30-33.) Finally, insofar as Plaintiffs

argue that the Sofield Defendants' interference with the easement violated their Fourteenth

Amendment rights, the Sofield Defendants are not state actors who can be held liable for Section

1983 violations. See, e.g., United States. v. Morrison, 529 U.S. 598, 621 (2000) (noting that "the

Fourteenth Amendment, by its very terms, prohibits only state action"). Accordingly,

Defendants' motions for summary judgment on this claim are granted.


C.      Section 1985 Claim Against All Defendants


Plaintiffs assert a claim pursuant to 42 U.S.C. § 1985 ("Section 1985") against all

Defendants, on essentially the same grounds as their Section 1983 claims. (Amend. Compl., at

¶¶ 60-64.) To state a claim pursuant to Section 1985(3), the only conceivably relevant provision

here, a plaintiff must assert:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person
> or class of persons of the equal protection of the laws, or of equal privileges and
> immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a
> person is either injured in his person or property or deprived of any right of a citizen of
> the United States.

Armstrong v. Brookdale Univ. Hosp. & Med. Ctr., No. 98 Civ. 2416, 2002 WL 13222, at * 3

(Jan. 3, 2002 E.D.N.Y.) (citing Mian v. Donaldson, 7 F.3d 1085, 1087 (2d Cir. 1993); see also

Schuler v. Bd. of Educ., Cent. Islip Union Free Sch. Dist., No. 96 Civ. 4702, 2000 WL 134346,

at *15 (E.D.N.Y. Feb. 1, 2000); Strong v. Montava, 64 F. Supp. 2d 101, 107 (E.D.N.Y. 1999).

Moreover, the conspiracy must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." United Bhd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). See also Vega v. Artus, 610 F. Supp. 2d 185, 204 (N.D.N.Y. 2009) (noting that in the Section 1985 context, "'class-based animus' encompasses only those groups with discrete and immutable characteristics such as race, national origin, and sex") (citations omitted). Plaintiffs have not alleged, let alone offered evidence, that they are members of a protected class, thus they cannot demonstrate a Section 1985 claim. See Hoffman v. Nassau County Police Dept., No. 06-CV-1947, 2008 WL 1926773, at *6 (E.D.N.Y. Apr. 30, 2008) (holding that "Plaintiff's § 1985(3) cause of action fails because the Complaint does not allege some class-based discriminatory animus"). Therefore, Defendants' motions to dismiss the Section 1985 claim are granted.

D.    Section 1986 Claim Against All Defendants

Defendants contend that as Plaintiffs have failed to prove a viable Section 1985 claim, their claim pursuant to 42 U.S.C. § 1986 ("Section 1986") fails as a matter of law. (Mun. Def. Mem. Of Law, at 21.) Section 1986 creates a cause of action against any person who has the knowledge of, and power to prevent, a Section 1985 conspiracy, but neglects or refuses to do so. See 42 U.S.C. § 1986. Thus, "a § 1986 claim must be predicated upon a valid § 1985 claim." Thomas v. Roach, 165 F.3d 137, 146 (2d Cir.1999). See also Posr v. Court Officer Shield No.

207, 180 F.3d 409, 419 (2d Cir.1999) (holding that no section 1986 claim will lie where there is

no valid section 1985 claim). As Defendants' motions for summary judgment on Plaintiffs'

Section 1985 claim are granted, their Section 1986 claim necessarily fails. See Thomas, 165

F.3d at 146. Accordingly, Defendants' motions for summary judgment on Plaintiffs' Section

1986 claim is granted.


      E.     State Law Claims


     Plaintiffs assert various state law claims against Defendants, including *inter alia*, claims

for false imprisonment, malicious prosecution, and intentional infliction of emotional distress.

Pursuant to 28 U.S.C. § 1367, a federal district court "shall have supplemental jurisdiction over

all other claims that are so related to claims in the action within such original jurisdiction that

they form part of the same case or controversy . . . . " However, a district court "may decline to

exercise supplemental jurisdiction" if it has "dismissed all claims over which it has original

jurisdiction." 28 U.S.C § 1367(c)(3). Since Plaintiff's federal claims fail as a matter of law, there

is no independent basis for federal jurisdiction over Plaintiff's state law claims. See e.g., United

Mine Workers of America v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)

("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a

jurisdictional sense, the state claims should be dismissed as well."); Hartline v. Gallo, No. 03

Civ.1974, 2006 WL 2850609 (E.D.N.Y. Sept. 30, 2006).

     Accordingly, Plaintiffs' state law claims are dismissed without prejudice.

IV.    Conclusion


For the reasons stated above, Defendants' motions for summary judgment are

GRANTED.  The Clerk of the Court is directed to close this case.


**SO ORDERED.**

_____
SANDRA J. FEUERSTEIN
United States District Judge


Dated: September 15, 2010
         Central Islip, New York